IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON LEROY NEALEIGH,

              Petitioner,

    v.

COREY FHUERE,

              Respondent.

Case No. 6:24-cv-00935-AN

OPINION AND ORDER

Susan F. Wilk
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

      Attorney for Petitioner

Dan Rayfield, Attorney General
Nick M. Kallstrom, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

      Attorneys for Respondent

1 – OPINION AND ORDER

NELSON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his Clackamas County convictions dated November 19, 2019.  For the reasons that follow, the Second Amended Petition for Writ of Habeas Corpus (#38) is denied.

## BACKGROUND

Petitioner and the victim in this case, SL, were involved in a romantic relationship in 2019. They were both homeless and living out of their cars. They lived and slept in the bed of Petitioner's truck and used SL's car to drive locally. On June 15, 2019, at approximately 1:30 a.m., SL woke to discover that her car had been moved. She had not given Petitioner permission to use it, and he refused to return her keys when she asked for them. SL then locked herself in the car, presumably to keep Petitioner from using it. He proceeded to retrieve a hammer and used it to strike the driver's side window, but the window did not break. Respondent's Exhibit 106, p. 24. SL would later testify at trial that Petitioner used the keys to unlock the door, pulled her from the car by her hair, and hit her head as well as her hand with the hammer. *Id.* at 24-25, 117-120.

SL had begun to scream, and Petitioner told her to "shut up, shut up" and "get in the car, get in the car" because he wanted to return an air compressor to his friend, Dave Martin. *Id.* at 27. When they arrived at Martin's house, SL asked Martin to help her. She was bleeding from the head, and Martin told Petitioner to let her have her car back, which Petitioner did. *Id.* at 30. SL then drove to the house of a friend, Sue Whitaker. Whitaker described SL as frantic, crying, and having blood all over her head. *Id.* at 88-89. SL told Whitaker that Petitioner "had hit her in the head with a hammer." *Id.* at 88.

Whitaker brought SL to the hospital where medical providers placed her fractured hand in a cast and applied five staples to the wound in her scalp. While at the hospital, SL participated in

2 – OPINION AND ORDER

an interview with Deputy Kyle Veracruz, telling him that Petitioner struck her more than once with a hammer, and she repeatedly told Deputy Veracruz that Petitioner hit her in the head with the hammer. *Id.* at 119-23.

Approximately two weeks later, the two renewed their relationship until another violent encounter took place on September 17, 2019. SL indicated to Petitioner that she did not wish to engage in sexual relations with him that day, and he became angry and was "ranting and raving in the car." *Id* at 42. Fearful for her safety, SL ultimately drove her car to a secluded area where Petitioner had sexual contact with her. *Id* at 43-44. He then fell asleep, and SL began to drive away. She hit a pothole, jarring the car and waking Petitioner. This apparently angered him once again. He told SL she was going the wrong way and threatened that if she reached the pavement, he would kill her. *Id.* at 45. SL drove for approximately another half mile until Petitioner grabbed the steering wheel and jerked it toward him, causing them to crash SL's car into trees. SL feared Petitioner was going to kill her, so she ran into the woods and called 9-1-1. *Id.* at 46. A sheriff's deputy responded and arrested Petitioner.

Following initial charges filed by Information, the Clackamas County Grand Jury indicted Petitioner on seven counts: Assault in the Second Degree (Count 1), Unlawful Use of a Weapon (Count 2), two counts of Menacing (Counts 3 and 6), Assault in the Fourth Degree (Count 4), Harassment (Count 5), and Reckless Endangerment (Count 7). Respondent's Exhibits 102 & 103. Petitioner proceeded to a bench trial where he testified in his own defense. The more serious charges arose out of the June 15 incident (Counts 1-3). Petitioner denied ever hitting SL or her car with a hammer, described her as the aggressor, and claimed that when they arrived at Martin's house she had a bloody head because she was hitting herself in the head, pulling her own hair, and acting hysterically. *Id.* at 223. Martin similarly testified that SL was "hitting herself in the head

3 – OPINION AND ORDER

and pulling out her own hair," but the State produced evidence of Petitioner's pretrial recorded calls from the County Jail where he instructed Martin to "[m]ake sure that you describe the fact that I was the one that was injured and my clothes were hanging off me" and that SL "was pulling her own hair, but she was just fine." *Id.* at 262. In a different recorded call, he claimed to be "orchestrating people" and getting his "ducks in a row, and making sure everyone has got the same story[.]" *Id.* at 268.

The trial judge found SL to be credible, found Petitioner not to be credible, and found his witnesses to lack any credibility "particularly in light of the jail tapes that were provided." *Id.* at 277-78. She found Petitioner guilty of all charges and sentenced him to concurrent and consecutive terms totaling 94 months in prison. Respondent's Exhibit 101.

Petitioner initiated a direct appeal, but elected to voluntarily dismiss it shortly after filing it. Respondent's Exhibit 109-110. He next filed for post-conviction relief ("PCR") in Marion County where, most relevant to this federal habeas case, Petitioner alleged that his trial attorney had not properly advised him in advance of his decision to opt for a bench trial. The PCR court denied relief on all claims. The Oregon Court of Appeals affirmed the PCR court's decision in a non-precedential opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 131, 133, 134.

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on June 11, 2024. After the Court had the opportunity to review the record, it appointed the Federal Public Defender to represent him. With the assistance of appointed counsel, Petitioner filed a Second Amended Petition (#38) in which he raises a variety of claims, most of which he concedes he is unable to prove. *See* Memo in Support (#43), p. 19 n. 1. The Court denies these unargued claims without discussion. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (Petitioner bears the burden of proving his claims).

4 – OPINION AND ORDER

Petitioner limits his briefing to the following three claims:

> Ground I:     Petitioner's waiver of his right to a jury trial was not knowing, voluntary, and intelligent;
>
> Ground II(B): Trial counsel was ineffective in failing to ensure Petitioner made a knowing, voluntary, and intelligent decision to waive his right to a jury when counsel failed to discuss with him the right to request specific jury instructions or to seek a unanimous jury verdict; and
>
> Ground II(F):  Trial counsel erred when he failed to move to sever and seek separate trials on Counts 1-2 and Counts 4-7.

Second Amended Petition (#38), pp. 5-6.

Respondent asks the Court to deny relief on Grounds I, II(B), and II(F) because: (1) Petitioner failed to fairly present, and has now procedurally defaulted, Ground I, the portion of Ground II (B) pertaining to counsel's alleged failure to request specific jury instructions, and Ground II(F); (2) Petitioner is unable to excuse his procedural default; and (3) the Oregon Court of Appeals reasonably denied the properly preserved portion of Ground II(B).

## **DISCUSSION**

### I.     **Exhaustion and Procedural Default**

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'afford[ing] the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)).

If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In this respect, a petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In Ground I, Petitioner appears to assert a claim against the trial court, namely that the judge did not ensure that his jury waiver was knowing, voluntary, and intelligent. As discussed above, Petitioner did not pursue a direct appeal, thus he raised no claims for direct appellate review. Although he filed a PCR action, he did not raise a due process challenge based upon his allegedly faulty jury waiver. *See* Respondent's Exhibit 113. Because the time for properly raising such a claim in state court has passed, Ground I is procedurally defaulted.

The State concedes that Petitioner fairly presented the portion of his Ground II(B) claim that trial counsel was ineffective for failing to advise him that the Supreme Court had granted *certiorari* in a case focusing on the constitutionality of non-unanimous jury verdicts, but asserts that Petitioner failed to fairly present the aspect of Ground II(B) that counsel should have discussed his right to request specific jury instructions. In his initial-level PCR proceedings, Petitioner raised counsel's purported failure to discuss jury instructions that could be requested. *See id*. However,

6 – OPINION AND ORDER

he elected not to pursue that claim on appeal. *See* Respondent's Exhibit 129, 132. As a result, he did not fairly present his claim to the Oregon Supreme Court, and the jury instruction portion of Ground II(B) is now procedurally defaulted.

In Ground II(F), Petitioner contends that trial counsel erred when he failed to move to sever Counts 1-3 from Counts 4-7 for the purpose of having separate trials. Petitioner did not raise any such claim in his PCR Petition or in his subsequent state appeals. *See* Respondent's Exhibits 113, 129, 132. Petitioner therefore failed to fairly present Ground II(F) in state court, and it is now procedurally defaulted.

## II.    <u>Excusing Procedural Default</u>

### A.    <u>Gateway Claim of Actual Innocence</u>

Petitioner asks the Court to excuse his procedural default because he can make a showing of showing of actual innocence in relation to Counts One and Two stemming from the June 15 hammer attack on SL. In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court addressed the process by which state prisoners may prove "actual innocence" so as to excuse a procedural default. The Court explained that in order to be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence-–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-– that was not presented at trial." *Id.* at 324; *Downs v. Hoyt*, 232 F.3d 1031, 1040 (9th Cir. 2000), *cert. denied*, 532 U.S. 999 (2001). Ultimately, a petitioner must prove that, in light of his new evidence of innocence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327; *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Downs*, 232 F.3d at 1040. In making this determination, this Court "must assess the

7 – OPINION AND ORDER

probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup*, 513 U.S. at 332.

In this case, Petitioner offers a Declaration from SL that she authored with the assistance of an investigator from the Federal Public Defender's Office.[1] She expresses some level of doubt regarding her recollection of whether Petitioner struck her in the head with a hammer during the June 15 incident. SL states that when she testified at trial that she had been subjected to blows from the hammer, she was making an assumption because she did not remember actually being struck by the hammer. SL Declaration (#42-1), ¶ 10. She now provides, "the truth is that I don't know for sure if he hit me with a hammer. Instead, I assumed this was the case because of my injuries." *Id.* at ¶ 11. She further provides:

> I believe that at some point during this struggle, I was hit in the head with the hammer, but I am not sure that this is what happened, and I do not have a specific recollection of being hit with a hammer. I noted later that I was bleeding on my head and hand, so I assumed that it must have been from the hammer.

*Id.* at ¶ 6.

Where a claim of actual innocence relies upon witness recantation, a habeas petitioner must show that "every juror would credit her recantation testimony over her trial testimony." *Jones v. Taylor*, 763 F.3d 1242, 1250 (9th Cir. 2014). This task is made all the more difficult because "[r]ecanting testimony has long been disfavored as the basis for a claim of innocence" and is to be viewed "with extreme suspicion." *Carriger v. Stewart*, 132 F.3d 463, 483 (9th Cir. 1997) (Kozinski,

---

[1] Petitioner also presents a Declaration from his PCR counsel in which she states that she should have raised an ineffective assistance of counsel claim based upon counsel's purported failure to move for severance of charges as set forth in Ground II(b). *See* Declaration of Kristen Williams (#42-3). Although Petitioner cites to PCR counsel's Declaration as new evidence of his innocence, a showing of actual innocence under *Schlup* requires him to show factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 538, 559 (1998).

8 – OPINION AND ORDER

J., dissenting); *see also Haouari v. United States,* 510 F.3d 350, 353 (2nd Cir. 2007) (internal citation omitted) ("It is axiomatic that witness recantations must be looked upon with the utmost suspicion").

SL's Declaration does not constitute a recantation; she still believes Petitioner hit her with the hammer. Even if the contents of the Declaration could be construed as a recantation, it is not so strong that no reasonable juror would credit SL's trial testimony over her Declaration. Within hours of the June 15 incident, SL: (1) told Whitaker that Petitioner had hit her in the head with a hammer; and (2) told Officer Veracruz repeatedly that Petitioner had hit her in the head with a hammer. Trial Transcript, pp. 88, 119-23. Consistent with these statements, she later testified at trial that Petitioner hit her hand and her head with the hammer, testimony that the trial judge found to be credible. *Id.* at 23-25.

More than six years later, she now expresses less certainty than she did in 2019. However, she continues to recollect that Petitioner hit her car window with a hammer immediately before assaulting her, and still believes Petitioner hit her in the head with the hammer once she was out of the car. SL Declaration (#42-1) ¶¶ 5, 6. Faced with this record, a reasonable juror could readily conclude that Petitioner did, in fact, hit SL in the head (and her hand) with the hammer. Petitioner is therefore unable to pass through the gateway of actual innocence so as to excuse his procedural default.

## B.    *Martinez* Cause and Prejudice

As discussed above, Petitioner procedurally defaulted his Ground II(F) claim wherein he alleges that his trial attorney was ineffective for failing to move to sever Counts 1-3 from Counts 4-7. He argues, however, that he can show cause and prejudice to excuse his default due to attorney

9 – OPINION AND ORDER

error. Specifically, he claims that his PCR attorney was ineffective for failing to raise the substance of Ground II(F) during the PCR proceedings in Marion County.

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court set forth the procedure by which a habeas corpus petitioner can show cause and prejudice to excuse a procedural default due to failings by a PCR attorney in omitting claims of ineffective assistance of trial counsel. In order to establish cause under *Martinez,* a habeas petitioner must establish that his attorney in his initial-level PCR proceedings was ineffective under the standards the Supreme Court announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id* at 14. In order to do so, Petitioner must first show that his counsel's performance fell below an objective standard of reasonableness. *Strickland* 466 U.S. at 686-87. Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance[.]" *Id.* at 689.

Second, Petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is generally whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In order to make the prejudice showing in the *Martinez* context, a habeas petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez,* 566 U.S. at 14.

The contours of a "substantial" claim are not precisely defined, but the Supreme Court likens the standard to that of a certificate of appealability in a habeas corpus case. *Id.* In order to secure a certificate of appealability, habeas petitioners must generally show that reasonable jurists might find the outcome debatable, or that the issues are "adequate to deserve encouragement to

proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). On the other hand, a claim is considered "insubstantial" if "it does not have any merit or . . . is wholly without factual support." *Id* at 15. "Notably, the standard for evaluating the underlying trial counsel IAC claim during the *Martinez* prejudice analysis is not as stringent as that required when considering the merits of the underlying claim." *Leeds v. Russell,* 75 F.4th 1009, 1017 (9th Cir. 2023) (citing *Michaels v. Davis,* 51 F.4th 904, 930 (9th Cir. 2022).

In assessing whether a habeas petitioner can show cause and prejudice under *Martinez,* the record is limited to that presented to the state courts unless he can meet one of the stringent requirements of 28 U.S.C. § 2254(e)(2).[2] *See Shinn v. Ramirez*, 596 U.S. 366, 380 (2022) (if a habeas petitioner cannot meet the requirements of § 2254(e)(2), "a federal court may not hold an evidentiary hearing—or otherwise consider new evidence—to assess cause and prejudice under *Martinez*."). Because Petitioner has not met the requirements of § 2254(e)(2), the Court assesses his *Martinez* claim on the existing state court record.[3]

---

[2] Under 28 U.S.C. §2254(e)(2), if a habeas petitioner has failed to diligently develop evidence in state court, evidentiary development is permitted only if his claim relies on: 1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or 2) a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(i) and (ii). In addition to meeting one of the foregoing requirements, a petitioner must also establish by clear and convincing evidence that no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254 (e)(2)(B). Because any fault of Petitioner's PCR attorney in failing to develop a proper record is attributable to Petitioner, he must satisfy these strict requirements in order to expand the record. *See Shinn,* 596 U.S. at 382-83.

[3] Petitioner offers a Declaration from PCR counsel where she states that she looked into the possibility of raising an ineffective assistance of trial counsel claim for failing to move to sever, does not recall why she did not raise the claim, and believes she should have raised the claim. Williams Declaration (#42-2), p. 2. Even if this document were properly before the Court for its consideration, it would not materially affect the legal analysis.

11 – OPINION AND ORDER

Petitioner argues that his Ground II(F) ineffective assistance of counsel claim is substantial because it was incumbent upon his trial attorney to seek separate trials for the June and September incidents, respectively. He maintains that he was prejudiced by counsel's failure because while the two different incidents involved the same perpetrator and victim in domestic violence situations, they differed in character because the June offenses involved a weapon and the State impeached Petitioner's witnesses with jailhouse recordings that would not have been admissible had the State tried the September charges separately.

ORS 132.560 governs joinder and consolidation of charges in Oregon, and the relevant portion of that statute provides as follows:

> Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:
>
> (A) Of the same or similar character;
>
> (B) Based on the same act or transaction; or
>
> (C) Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

ORS 132.560(1)(b).

Joined offenses can be severed if a defendant can establish that he will suffer substantial prejudice as a result. *State v. Hernandez-Estaban,* 374 Or. 300, 314-15 (2025). In this case, however, the fact that certain evidence would not have been cross-admissible in separate trials does not necessarily establish substantial prejudice. *See, e.g., State v. Dinnick,* 248 Or. App. 167, 178-79 (2012) (assuming evidence not mutually admissible, it was "nonetheless sufficiently simple and distinct to mitigate the dangers created by joinder."); *State v. Buyes,* 280 Or. App. 564, 569-70 (2016) ("we have repeatedly affirmed trial courts' denials of motions to sever offenses,

notwithstanding mutual inadmissibility of evidence, where the evidence in each case was sufficiently simple and distinct to mitigate the dangers created by joinder.") (internal quotation omitted).

Petitioner's case concerned two similar incidents, three months apart, pertaining to domestic violence connecting the same individuals. The evidence underlying each of the two events was distinct and, perhaps most importantly, evaluated by a judge in the context of a bench trial. Petitioner's attorney was of the opinion that under the circumstances of the case, "there isn't a judge in Clackamas County that's going to sever those. . . ." Respondent's Exhibit 123, p. 14.

Despite the fact that the June incident involved a weapon whereas the September incident did not, the offenses were of similar character, involved simple and distinct evidence, and the trial judge was well equipped to sort through the evidence underlying each incident. Under these circumstances, Petitioner could not demonstrate that he was substantially prejudiced by the joinder of charges. Accordingly, counsel's performance did not fall below an objective standard of reasonableness when he declined to file a motion to sever. *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994), *rev. denied*, 513 U.S. 1001 (1994) (an attorney is not required to file a motion he knows to be meritless). Ground II(F) is therefore not substantial, and Petitioner is unable to excuse his procedural default.

## III.    The Merits

### A.    Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the Supreme Court's cases, or resolves a materially indistinguishable set of facts as those the Supreme Court addressed yet arrives at a different result. "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Twenty-eight U.S.C. § 2254(d)(2) allows a petitioner to "challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). A state court renders an unreasonable determination of the facts if it "plainly misapprehends or misstates the record in making its findings or where the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Andrew v. Davis,* 944 F.3d 1092, 1107 (9th Cir. 2019) (internal quotations omitted). A federal habeas court cannot overturn a state court decision

on factual grounds "unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is a "'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our state-court colleagues.'" *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

**B.**    **Analysis**

In Petitioner's sole remaining claim (contained within Ground II(B)), he faults trial counsel for not advising him that the Supreme Court had granted *certiorari* in *Ramos* when Petitioner was contemplating whether to waive a jury. He states that the grant of *certiorari* was an event of procedural significance because it signaled the Supreme Court's potential willingness to declare Oregon's nonunanimous jury procedure unconstitutional, a result that it ultimately reached in *Ramos*. According to Petitioner, the decision to waive a jury was his alone, and counsel's failure to advise him of the grant of *certiorari* deprived him of the opportunity to make that choice in a knowing, voluntary, and intelligent way.

The Oregon Court of Appeals is the last state court to issue a reasoned opinion on this issue, thus this is the pertinent decision to review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). The appellate court focused exclusively on the prejudice inquiry of *Strickland* without touching on whether trial counsel's performance fell below an objective standard of reasonableness. It concluded, "petitioner did not prove that he would have proceeded to trial by jury had he received different advice—indeed, he did not present any evidence that his decision to waive a jury was affected in any way by whether a jury verdict must be unanimous." Respondent's

Exhibit 131, p. 1. Petitioner maintains that this decision constitutes an unreasonable factual determination.[4]

Petitioner first argues that the Oregon Court of Appeals' decision was factually unreasonable because it required Petitioner to show how the jury unanimity issue affected his decision to waive his right to a jury when trial counsel never discussed the issue with him at all. However, by the time Petitioner filed his PCR Petition alleging that counsel failed to advise him of *Ramos*, he was obviously aware of the jury unanimity issue. He was not only aware of how that actually played out in the Supreme Court, but also how the grant of *certiorari* might have impacted his decision to proceed with a bench trial had counsel alerted him to it. It was not unreasonable for the appellate court to require him to prove his claim in this manner.

Petitioner also states that the Oregon Court of Appeals unreasonably bypassed the deficient performance inquiry associated with *Strickland*. Petitioner has not pointed to any precedent that requires a court to engage in both a deficient performance analysis and a prejudice inquiry in order to adequately adjudicate an ineffective assistance of counsel claim. Indeed, the Supreme Court has not only authorized the practice, but encouraged it. *See Strickland*, 466 U.S. at 697 (a court need not address both *Strickland* components and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *see also Jackson v. Calderon,* 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*).

---

[4] Petitioner also takes issue with the PCR court's decision on the deficient performance prong of *Strickland*, but the Court need not engage in such an inquiry because, as discussed within the body of this Opinion, the Oregon Court of Appeals' conclusion on the prejudice issue did not involve an unreasonable determination of the facts or an unreasonable application of clearly established federal law. Even if resolution of Ground II(B) were dependent upon whether counsel rendered adequate performance, counsel performed reasonably given the highly speculative nature of *Ramos'* applicability to Petitioner's case at the time he waived his right to a jury.

16 – OPINION AND ORDER

Petitioner next asserts that, irrespective of *Ramos,* he was consistent throughout his PCR action that he never wished to waive his right to a jury, but the Oregon Court of Appeals ignored his PCR evidence to this effect. There are two problems with this argument. First, trial counsel testified by deposition during the PCR action that Petitioner preferred a bench trial. Respondent's Exhibit 123, pp. 62-63. Although Petitioner presented contrary evidence, the PCR court specifically found trial counsel to be credible and Petitioner not to be credible on this point. Respondent's Exhibit 127, p. 4. The Oregon Court of Appeals was not in a position to make a new credibility determination. *See, e.g., Newmann v. Highberger,* 330 Or. App. 229, 234 (2024) ("the post-conviction court's finding on petitioner's credibility binds us on appeal and precludes the conclusion that petitioner was prejudiced by the alleged deficiency in counsel's advice.").

Even if the PCR court had not made such a credibility determination, Petitioner never presented any evidence in his PCR proceeding that, had he been aware of the grant of *certiorari* in *Ramos*, he would have exercised his right to a trial by jury. *See* Respondent's Exhibits 118, 126. For all of these reasons, the Oregon Court of Appeals' decision did not involve an unreasonable determination of the facts, nor did it represent an unreasonable application of clearly established federal law.

///

///

///

///

///

///

///

17 – OPINION AND ORDER

**CONCLUSION**

For the reasons identified above, the Second Amended Petition for Writ of Habeas Corpus (#38) is denied. The Court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

_May 21, 2026_
DATE

_____
Adrienne Nelson
United States District Judge

18 – OPINION AND ORDER